IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Kareem Martin,<br><br>                                  Plaintiff,<br><br>v.<br><br>Fairfield County Sheriff's Office, Sheriff Will Montgomery, Deputy Samantha Demirtas, Sergeant Timothy Inman, and Sergeant Chris Darner,<br><br>                                  Defendants. | C/A No. 0:20-cv-01400-MGL-PJG |

**AMENDED COMPLAINT**
**(Jury Trial Demanded)**

Plaintiff, complaining of the Defendants, asserts the following:

**PREFACE**

This action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's constitutional right to bear arms under the Second Amendment, Plaintiff's constitutional right be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments, and Plaintiff's right to free speech under the First Amendment of the United States Constitution. Plaintiff alleges law enforcement officers Sheriff Will Montgomery, Deputy Samantha Demirtas, Sergeant Timothy Inman, and Sergeant Chris Darner with the Fairfield County Sheriff's Office, as part of a plan, scheme and practice to harass citizens by fabricating fraudulent grounds to arrest innocent citizens who are without substantial financial means to assert their legal and constitutional rights. Sheriff Will Montgomery, Deputy Samantha Demirtas, Sergeant Timothy Inman, and Sergeant Chris Darner are being sued in their individual capacity.

Plaintiff brings state law claims for negligence/gross negligence, false imprisonment, negligent hiring, negligent training, negligent supervision, negligent retention, negligence (general), gross negligence, and assault, against the Fairfield County Sheriff's Office who through its agents, contractors, and employees through their intentional acts violated Plaintiff's civil rights.

## JURISDICTION AND PARTIES

1. Plaintiff, Kareem Martin, is a citizen and resident of the County of Fairfield, State of South Carolina.

2. Fairfield County Sheriff's Office is a political subdivision of the State of South Carolina and is being sued under the South Carolina Tort Claims Act [SCTCA].

3. Upon information and belief Sheriff Will Montgomery is a citizen and resident of Fairfield County, State of South Carolina. At all times alleged in the Complaint the Sheriff was an agent or employee of the Fairfield County Sheriff's Office and at all relevant times was acting in the course and scope of his official duties and under color of State law. Sheriff Will Montgomery is being sued in his individual capacity for compensatory and punitive damages under Federal law pursuant to 42 U.S.C. § 1983.

4. Upon information and belief Deputy Samantha Demirtas is a citizen and resident of Fairfield County, State of South Carolina. At all times alleged in the Complaint Deputy Samantha Demirtas was a deputy and agent or employee of the Fairfield County Sheriff's Office and at all relevant times was acting in the course and scope of her official duties and under color of State law. Deputy Samantha Demirtas is being sued in her individual capacity for compensatory and punitive damages under Federal law pursuant to 42 U.S.C. § 1983.

5. Upon information and belief Sergeant Timothy Inman is a citizen and resident of Fairfield County, State of South Carolina. At all times alleged in the Complaint Sergeant Timothy Inman was a deputy and agent or employee of the Fairfield County Sheriff's Office and at all relevant times was acting in the course and scope of his official duties and under color of State law. Sergeant Timothy Inman is being sued in his individual capacity for compensatory and punitive damages under Federal law pursuant to 42 U.S.C. § 1983.

6. Upon information and belief Sergeant Chris Darner is a citizen and resident of Faitrfield County, State of South Carolina. At all times alleged in the Complaint Sergeant Chris Darner was a deputy and agent or employee of the Fairfield County Sheriff's Office and at all relevant times was acting in the course and scope of his official duties and under color of State law. Sergeant Chris Darner is being sued in his individual capacity for compensatory and punitive damages under Federal law pursuant to 42 U.S.C. § 1983.

7. The negligent and grossly negligent acts, omissions, and liability forming conduct of all Defendants includes their agents, principals, employees and/or servants, both directly and vicariously, pursuant to principles of non-delegable duty, apparent authority, agency, ostensible agency and /or *respondent superior* and the acts and/or omissions of the above named Defendants were the direct and proximate cause of the injuries, damages and losses of the Plaintiff.

8. Plaintiff alleges that the Fairfield County Sheriff's Office, through its agents, contractors, and employees violated Plaintiff's civil rights by intentionally, or with a reckless disregard for the truth, wantonly, and negligently and falsely accusing him of the crime of Breach of Peace. The actions of the Fairfield County Sheriff's Office, through its agents, contractors, and employees, caused him to be falsely imprisoned, arrested, detained, assaulted, battered, and defamed thus suffering a loss of his liberty and emotional harm. Defendant's

actions caused Plaintiff to suffer alteration of his lifestyle, emotional harm, loss of reputation, humiliation, apprehension, anxiety, stress, depression, embarrassment, shame, fear, and a loss of enjoyment of life. Law enforcement claimed probable cause to arrest Plaintiff because he (1) refused to give his name to law enforcement and, (2) was target shooting after dark even though it was on his own property and no one complained, none of which was illegal, and even if it was did not give rise to an arrest.

9. Because of the false accusations of the Defendants, Plaintiff was detained at the Fairfield County Detention Center overnight.

10. Plaintiff had never been incarcerated before. Additionally, his relative is a law enforcement officer which made the unlawful arrest even more traumatic and embarrassing.

11. This suit is brought in Fairfield County, South Carolina where Plaintiff resides and where the tortuous acts committed by Defendant occurred. Additionally, upon information and belief almost all the parties to this action and witnesses are residents of Fairfield County, South Carolina, pursuant to 28 U.S.C. §1391 and Local Rule 3.01.

12. The things and matters alleged herein are within the jurisdiction of this Court.

13. Venue is proper as the Defendant is located here in Fairfield County.

**FACTUAL ALLEGATIONS**

14. On February 10, 2018 a call was placed to Defendant Fairfield County Sheriff's Office by Jaida Martin, seeking assistance concerning harassing phone calls.

15. Jaida Martin is a relative of Plaintiff and resides at 938 Martin Road, Winnsboro, South Carolina.

16. Minnie Lee Martin was also present and also resided near 938 Martin Road, Winnsboro, South Carolina.

17. Plaintiff resides at 892 Martin Road, Winnsboro, South Carolina 29180.

18. Both of these residences are situated in an area where all adjacent lots are owned by relatives. This land is considered "family land".

19. Deputy Samantha Demirtas responded to the call.

20. While in the process of taking a statement from Jaida Martin, approximately five gun shots were heard coming from a nearby area.

21. Deputy Samantha Demirtas asked Jadia Martin and her grandmother, Minnie Martin, if they knew what was going on to which replied "no".

22. Deputy Samantha Demirtas called central 144, drew her weapon, and walked toward the gunshots to investigate.

23. Several yards from the spot where Deputy Samantha Demirtas was taking the report, behind several houses, and at the edge of a field, Deputy Samantha Demirtas found Plaintiff and his relative, Keenan Avery Martin, target shooting.

24. At all times Plaintiff and Keenan Avery Martin were shooting a lawful weapon. While shooting, his gun was aimed at a target which was positioned such that the aim was on a downward slope. The target area was lit with a flashlight. Additionally, there were no homes in an unsafe proximity to the line of fire.

25. Target shooting on this family land was a common practice and beloved pastime of Plaintiff and other family members.

26. Deputy Samantha Demirtas approached Plaintiff and Keenan Keenan Avery Martin readily and politely complied with.

27. Deputy S. Demirtas then demanded that Plaintiff and Keenan Avery Martin get on the ground in the mud and demanded to know what they were shooting at.

28. Plaintiff and Keenan Avery Martin responded that they were not shooting at anything but just shooting and asked if they could not shoot on their own property.

29. They informed Deputy Samantha Demirtas several times that it was their property.

30. Deputy Samantha Demirtas asked if the property was in Plaintiff's name. When he responded, "might be" Deputy Samantha Demirtas stated "keep on getting smart and you will end up going to jail tonight".

31. Plaintiff and Keenan Avery Martin inform the officer several more times that they were shooting on Plaintiffs own property and then asked if that was illegal.

32. Deputy Samantha Demirtas state that it is illegal to shot when it is "this dark" only to later tell them that it was not illegal.

33. When Deputy Samantha Demirtas asked Plaintiff and Keenan Avery Martin their names Plaintiff inquired as to why she needed them.

34. Deputy Samantha Demirtas maintained Plaintiff and Keenan Avery Martin at gun point and on the ground even though there had been no illegal activity on the part of Plaintiff and Avery Martin.

35. Upon this Deputy Samantha Demirtas called dispatch and informed them that she had "two black males" who were refusing to identify themselves and had a shotgun and what appeared to be a handgun.

36. Deputy Samantha Demirtas then handcuffed them and informed them that shooting on family property is no issue "but when you have a deputy out here trying to do a report, it is dark, common sense, common sense".

37. Deputy Samantha Demirtas was informed by Plaintiffs grandmother, Minnie Lee Martin, that the land was family land, they were not shooting at any persons, only in the air. Still Deputy Samantha Demirtas did not release the young men, but asked Plaintiff and Keenan Avery Martin if they had ID's on them.

38. When Plaintiff asked why they were being detained, Deputy Samantha Demirtas informed him that he was being detained until she could identify them to see who they were and if they were "clear", meaning if there were any outstanding warrants on them. When Plaintiff did not give up his name Deputy Samantha Demirtas threatened him stating, "keep on".

39. At this point Deputy Samantha Demirtas had already informed Plaintiff and Keenan Avery Martin that they had not committed any illegal activity. Yet she chooses to continue to detain them with no legal authority.

40. In initiating her arrest Deputy Samantha Demirtas claimed that she had it on camera that they were discharging weapons in an unsafe manner in the air. This was not true. When Plaintiff questioned her on this she responded "Ok, alright".

41. Plaintiff continued to inquire what they had done. Deputy Samantha Demirtas stated that she had no issue letting them go since this was their family property, but she wants to "run" them.

42. Because Deputy Samantha Demirtas knew she had no legal authority to continue to hold Plaintiff and Keenan Avery Martin against their will, she attempted to manufacture a reason and harassed them by out of the blue demanded, "where is the weed at". She was informed there was no weed. Still Plaintiff and Keenan Avery Martin were not released but escorted to the patrol car.

43. Other Officers Timothy Inman and Chris Darners arrives and Deputy Samantha Demirtas informed them that neither Plaintiff or Keenan Avery Martin had been cleared, they were argumentative, and the grandmother said they shoot straight up into the air. Officer Samantha Demirtas additionally stated that Plaintiff and Keenan Avery Martin were cooperative but would not give their names.

44. One of the officer's informed Deputy Samantha Demirtas to book them in as John Doe, "If they want to play, we will play" and informed Plaintiff and Keenan Avery Martin that until they identify themselves, they will be in jail.

45. Finally, Plaintiff's cousin gave the officers the name of Plaintiff and Keenan Avery Martin. Law enforcement ran their names through central and were informed that neither Plaintiff or Keenan Avery Martin had warrants out for them. One officer responded, "that is so ridiculous".

46. Plaintiff again inquired as to what he did wrong and is told by law enforcement that:

   a. There is a county ordinance that states once the sun goes down you have to stop shooting.

   b. That if a law enforcement officer asks you your name you must give it to them.

47. Law enforcement knew or should have known that both of these statements were false.

48. These claims by law enforcement only served as a pretext to arrest Plaintiff and Keenan Avery Martin.

49. At all times Minnie Martin informed Law Enforcement that there was no problem with Plaintiff and Keenan Avery Martin shooting on the land. The Minnie Martin clarified that

the boys shoot down into the woods. At no time did Jaida Martin or Minnie Martin ever complain to law enforcement about the shooting.

      50.      Even though Plaintiff and Keenan Avery Martin were:

          a.  Target shooting with legal guns;

          b.  Shooting on family property;

          c.  Shooting down into the woods;

          d.  Had taken appropriate safety precautions.

          e.  Had no warrants for their arrest; and

          f.  Were legal gun owners.

Law enforcement officers Deputy S. Demirtas, Sergeant Timothy Inman, and Sergeant Chris Darner chose to fabricate Plaintiffs violation of the law and arrest him for Breach of Peace because they did not like the fact that two young black men were allowed to exercise their constitutional rights by legally shooting weapons and not readily providing their names to law enforcement even though they had no legal obligation to do so.

      51.      Plaintiff and Keenan Avery Martin were taken to Fairfield County jail for the sole reason to harass them and "teach them a lesson" as to who is in charge.

      52.      Upon information and belief, despite the enormous amount of improper conduct by these officers, including the fabrication of laws, none of these officers were in any way disciplined, retrained, or otherwise prevented in any way from continuing this course of unconstitutional conduct, improper and otherwise negligent and grossly negligent conduct.

      53.      Upon information and belief all of the officers were not properly trained and/or supervised yet the employing Defendants allowed and approved of this type of conduct exhibited by these Defendants when it was not justified.

54. All of the referenced law enforcement officers acted in violation of generally accepted law enforcement practices and standards.

55. The individual referenced officers' conduct was plainly incompetent, and they knowingly violated clearly established law arresting and/or detention without articulable suspicion, arrest without probable cause, unreasonable search and seizure, and failed to intervene when they had the opportunity to do so.

56. Because of Defendant's actions Plaintiff was confined against his will overnight.

57. Plaintiff did no more than exercise his constitutional rights in a lawful manner and when he questioned the actions of law enforcement, his constitutional rights were violated by the same officers he questioned.

58. Deputies Deputy Samantha Demirtas, Sergeant Timothy Inman, and Sergeant Chris Darner, violated Plaintiffs constitutional rights for no other reason than their supercilious, officious, and intrusive attitudes, wanting to throw their weight and apparent authority around in an effort to humiliate Plaintiff and "bring him to heel" without any legal authority to do so.

59. At all times Plaintiff had a right to enjoy legal activities on his own property, specifically target practice.

## FOR A FIRST CAUSE OF ACTION
### 42 USC 1983 1st, 2nd, 4th, and 14th Amendment violations

60. Plaintiff incorporates by reference all previous paragraphs above as if repeated herein.

61. The acts and omissions of Defendants by detaining and arresting Plaintiff without articulable suspicion, probable cause, legal authority to do so and without legal justification, no reasonable basis to believe a crime had been committed violated the Plaintiff's Fourth, Fourteenth, and First Amendment Rights.

62. Further, all officers referred to above are liable for the actions of the others, whether they stood by and said nothing or actively participated in the violations, as each of them was aware that Plaintiff's rights were being violated, and each had the opportunity to prevent further violation of the rights of Plaintiff, yet none of them chose to do so.

63. By the actions and omissions described above, these defendants violated 42 USC § 1983, depriving Plaintiff of the clearly established and well settled constitutional rights protected by the First, Second, Fourth, and Fourteenth Amendments to the United States Constitution:

    a. The right to be free from unreasonable searches and seizures as secured by the Fourth and Fourteenth Amendments;

    b. The right to be free from excessive and/or unreasonable force in the course of a seizure as secured by the Fourth and Fourteenth Amendments;

    c. The right to be free from the use of unlawful force as secured by the Fourth and Fourteenth Amendments;

    d. The right to be free from reckless, deliberately indifferent, and conscience shocking searches and seizures and/or excessive force as secured by the Fourteenth Amendment;

    e. The right to be free from injury, detention or arrest without substantive and procedural due process and from state created/enhanced danger as secured by the Fourteenth Amendment;

    f. The right to be free from State action for simply exercising their rights to free speech as secured by the First Amendment;

    g. The right to bear arms secured by the Second Amendment;

h. And other such particulars as may be learned through discovery.

64. As a direct and proximate result of the above described actions of Defendants Sheriff Will Montgomery, Deputy Samantha Demirtas, Sergeant Timothy Inman, and Sergeant Chris Darner, while acting at all times under the color of law, Plaintiff suffered emotional harm, alteration of his lifestyle, loss of reputation, humiliation, apprehension, anxiety, stress, depression, embarrassment, shame, fear, and a loss of enjoyment of life. Defendants are sued in their individual capacities.

65. Plaintiff seeks damages, punitive damages, and attorney's fees and costs.

## FOR A SECOND CAUSE OF ACTION
### Negligence and Gross Negligence State Tort Claims Act

66. Plaintiff incorporates by reference all previous paragraphs above as if repeated herein.

67. Defendant Fairfield County Sheriff's Office, its employees, agents, and contractors departed from the duties of care required by law enforcement officers and the agencies that hire train and employ these officers and were thereby negligent careless, grossly negligent, and reckless and acted in violation of the duties owed to Plaintiff in that they committed one or more of the following acts or omissions, any and all of which were a departure from the prevailing duties of care:

a. Failing to ensure the safety, security, freedom, and well-being of Plaintiff;

b. Failing to appreciate the conditions that existed on the day in question through their employees and/or agents;

c. Failing to adhere to proper law enforcement procedure through their employees and/or agents including, but not limited to, failing to ensure there was sufficient cause to detain and/or arrest citizens, namely Plaintiff;

    d. Failing to intervene and prevent other officers, employees, and/or agents from unlawfully detaining and/or arresting Plaintiff unlawfully;

    e. Failing to properly hire officers and /or agents that would properly hire, train, and supervise their officers;

    f. Failing to release from employment officers that would place the public at risk;

    g. Failing to have in place proper and adequate policies, procedures, and protocols for law enforcement to perform the services of warrants, searches, and seizers pursuant to the law and proper police procedure, training of officers, or if such policies procedures, and protocols were in place, in failing to use due care or even slight care to enforce them;

    h. Failing to ensure the accuracy and validity of any charge which Defendant and/or it's employees, agents, and contractors decide to arrest and take away the liberties of a citizen, namely Plaintiff;

    i. Falsely and wrongfully imprisoning citizens who have not committed criminal acts.

68. As a direct and proximate result of the negligence, gross negligence, reckless disregard for the truth, and departure from the standards of care owed by Defendant Fairfield Sheriff's Office, its employees, agents, and contractors, Plaintiff suffered emotional distress, anxiety, loss of liberty, grief, sorrow, and humiliation for which Plaintiff is entitled to recover in an amount to be determined by a jury at the trial in this action.

69. Plaintiff seeks damages and costs.

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. For judgment against all Defendants for actual, compensatory and punitive damages, when allowed by statute or the common law, to be determined by the Court and a jury;

B. For attorney's fees and costs where applicable;

C. For the costs and disbursements in the pursuit of this action; and

D. For such other and further relief as this Court may deem just and proper.

Respectfully Submitted,
THE CAMDEN LAW FIRM, PA

s/ Robert Butcher
Robert J. Butcher, 74722
Deborah J. Butcher, 74029
509 Walnut Street
Camden, South Carolina 29020
P.O. Box 610
Camden, South Carolina 29020
Telephone: (803) 432-7599
Facsimile: (803) 432-7499
Email: dbutcher@camdensc-law.com
Email: rbutcher@camdensc-law.com

PERRY LAW FIRM
Brett A. Perry
P.O. Box 1
Camden S.C. 29021
803-572-5885
brett@perrylawfirm.us
Attorneys for the Plaintiff

Camden, South Carolina
April 16, 2020