IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Kareem Martin,<br><br>                                  Plaintiff,<br><br>v.<br><br>Fairfield County Sheriff's Office, Sheriff Will Montgomery, Deputy Samantha Demirtas, Sergeant Timothy Inman, and Sergeant Chris Darner,<br><br>                                  Defendants. | C/A No. 0:20-cv-01400-MGL |

**PLAINTIFF'S OBJECTIONS TO THE
MAGISTRATE'S REPORT AND RECOMMENDATION (DKT. NO. 81)**

As the District Court must conduct a de novo review, Plaintiff incorporates Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment, the supporting Memorandum of Law, and the attached exhibits in support of these objections. Dkt. No. 73.

Plaintiff Kareem Martin files the following objections to the Magistrate Judge's Report and Recommendations, Dkt. No. 81 and asserts the following:

**I.      The Magistrate's finding of fact that alleges or implies that Plaintiff Kareem Martin and his cousin Keenan Martin were in Minnie Lee Martin's backyard is erroneous.**

The Magistrate's finding of fact that alleges or implies that Plaintiff Kareem Martin and his cousin Keenan Martin were shooting in Minnie Lee Martin's backyard is erroneous. R&R, Dkt. No. 81, *2.

At 5:08 in Deputy Demirtas' Body Worn Camera Video (2018-02-10 T23:41:58Z), Deputy Demirtas exits Minnie Lee Martin's back yard and crosses a dirt road onto the front of Ulyssee Harrison's property. Exhibit 9, *2. The Video shows Deputy Demirtas at the northwest

1

corner of Ulyssee Harrison when she sees and challenges the Plaintiff Kareem Martin and Keenan Martin. The video shows the two were walking northeast from where they were shooting, which is marked on Exhibit 9, *2, with a star.

Deputy Demitas was on another resident's property when she first sighted Plaintiff Kareem Martin and Keenan Martin.

The Court should find that Plaintiff and his cousin were shooting on private property completely separate and apart from Minnie Lee Martin and separate and apart from the location to which Deputy Demirtas responded to service the call by Jaida Martin.

> **II.     The Magistrate failed to include Deputy Demirtas' threat to arrest Plaintiff Kareem Matin and his cousin Keenan Martin for "being smart".**

Deputy Demirtas asked, "Who's property is it?" Exhibit 5, 2018-02-10 T23:42:42Z. Kareem Martin answers, "My property." Deputy Demirtas asked, "Whose?" Exhibit 5, 2018-02-10 T23:42:44Z. Kareem Martin answers, "My property." Deputy Demirtas asks, "Is it in your name?" Exhibit 5, 2018-02-10 T23:42:45Z. Kareem Martin answers, "Might be." ***Deputy Demirtas then threatened "Keep getting smart, end up going to jail, tonight."*** Exhibit 5, 2018-02-10 T23:42:50Z.

These threats are relevant to show that it is a jury question as to whether Deputy Demirtas would unconstitutionally arrest a citizen for "contempt of cop".

> **III.    The Magistrate failed to include Deputy Demirtas' ignorance of the law.**

Deputy Demirtas asked, "What are you all shooting at?" Exhibit 5, 2018-02-10 T23:42:51Z. Kareem stated, "I'm shooting on my property." and Keenan Martin asks, "You can't shoot?" Deputy Demirtas asked, "You see what time it is?" Exhibit 5, 2018-02-10 T23:42:56Z. One of the Plaintiffs asked her, "That's illegal?" ***Deputy Demirtas stated, falsely, "It sure is when it's this dark."*** Exhibit 5, 2018-02-10 T23:43:00Z.

There is no law in South Carolina that forbids shooting in the dark. The Fourth Circuit has held similar exigent circumstances do not justify the search and seizure of the Plaintiff. *United States v. Curry*, 965 F.3d 313 (4th Cir. 2020) (*en banc*) (Allowing officers to bypass the individualized suspicion requirement based on only the sound of gunfire and the general location where it may have originated would completely cripple a fundamental Fourth Amendment protection).

Deputy Demirtas' ignorance of the law is directly relevant as to her competence enforcing the law, especially when the Magistrate uses the facts to justify her recommendation to grant qualified immunity.

**IV.    The Magistrate failed to find that Minnie Lee Martin and Jaida Martin were not present to observe Plaintiff Kareem Martin and Keenan Martin "shooting in the air".**

Despite Minnie Lee Martin speculating Plaintiff Kareem Martin and Keenan Martin were "shooting in the air", she was with Deputy Demirtas at the time of the shooting and could not observe the alleged conduct. The shots begin at 4:23 in Deputy Demirtas' Body Worn Camera Video. Exhibit 5, 2018-02-10 T23:41:13Z. Deputy Demirtas did not observe this act and neither did Minnie Lee Martin. Exhibit 5, 2018-02-10 T23:45:16Z; Exhibit 5, 2018-02-10 T23:45:22Z; Exhibit 8, Deposition of Minnie Lee Martin, 24:3-9; *See also*, Exhibit 12, Deposition of Kareem Martin, Vol. II, 23:22-24:13. She could not rely on their statement because at the time shots were fired, Minnie Lee Martin, Jaida Martin, Minnie Lee Martin's home, and the cold darkness of a Fairfield County February night obstructed her view of the young men shooting.

**V.    The Magistrate failed to find that Deputy Demirtas had no right to continue to detain Plaintiff Kareem Martina and Keenan Martin once she learned that they were not involved in her investigation.**

3

To be sure, Deputy Samantha Demirtas did not trigger the Fourth Amendment protections by merely responding to the gunshots that night. Although her behavior and conduct were unprofessional – and may have been triggered by fear – once she learned (1) Plaintiff Kareem Martin and Keenan Martin were legally firing their weapons on a neighboring property upon which Kareem Martin lived and with the owner's permission and (3) after Minnie Lee Martin and Jaida Martin identified them as relatives who had the right to be there, Deputy Samantha Demirtas' investigation, detention, and interrogation of the Martins should have ended. **_Full stop._** Exhibit 5, 2018-02-10 T23:45:40Z.

The continued search and seizure of the Martins and seizure of their weapons was a violation of their First, Fourth, Fifth, and Fourteenth Amendment rights. Even with this violation, once Deputies Demirtas, Sergeant Inman, and Sergeant Darner learned Kareem Martin and Keenan Martin had no warrants and the weapons were not stolen, Kareem Martin and Keenan Martin should have been released. **_Full Stop._** Exhibit 5, 201802-10 T00:09:41Z. At this point, no one can argue that there was a reasonable suspicion of ongoing or imminent criminal activity to continue to detain, let alone, arrest, individuals in order to investigate any suspicion. *States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). This continued detainment was nothing more than the pay back or "we'll play" attitude the Defendant's had previously promised. Exhibit 5, 2018-02-10 T23:53:25Z. The deputies were exerting dominance where they had no legal authority.

Even though Deputy Demirtas may have initially believed that the shooting was related to Jaida Martin's complaint, once she learned the facts, there was no longer any reasonable suspicion to continue to detain the Martins. Deputy Demirtas knew that the Martins were not involved in Jaida Martin's complaint, she knew that there was no law against shooting at night,

4

and neither Kareem Martin nor Keenan Martin met any of the elements of breach of peace or any other crime except for the imaginary crime of disrespecting the police. "[E]very arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981).

**VI.     The Magistrate failed to find that Deputy Demirtas has no right to seize Plaintiff Kareem Martin and Keenan Martin and their weapons, remove them from their property, run their names for warrants, and run their weapons to see if they were stolen.**

As Plaintiff Kareem Martin and Keenana had not conducted any illegal acts, Deputy Demirtas had no right to seize them and their weapons at gunpoint, run their names for warrants, and run their weapons to see if they were stolen.

**VII.    The Magistrate erroneously stated that "Keenan declined having weed".**

This is a small error. Keenan did not "decline" having week, he "denied" having weed. Exhibit 5, 2018-02-10 T23:47:38Z.

**VIII.   The Magistrate failed to find that the deputies illegally searched Plaintiff Kareem Martin and Keenan Martin.**

At 13:41 in the video, Deputy Demirtas states, "You might want to search them. I haven't searched them yet." Exhibit 5, 2018-02-10 T23:50:30Z. Sergeant Darner then searches Keenan Martin, including emptying his pockets. Exhibit 7, 2018-02-10 T23:50:36Z The search was not a Terry frisk. Sergeant Harris searches Plaintiff Kareem Martin, including emptying his pockets. The search was not a Terry frisk.

**IX.     The Magistrate's conclusion that Sheriff Will Montgomery cannot be held liable for unconstitutional policies and procedures is wrong.**

Plaintiff is not alleging supervisory liability under *respondeat superior*.

Supervisory liability "is not premised on *respondeat superior*, *Monell v. Department of Social Services*, 436 U.S. 658, 691, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978), but on a recognition

5

that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (Citing *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980), *cert. denied*, 450 U.S. 929, 67 L. Ed. 2d 361, 101 S. Ct. 1387 (1981); *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Ci. 1983); *Withers v. Levine*, 615 F.2d 158 (4th Cir. 1980). While the Fourth Circuit instructs that:

> The plaintiff, of course, assumes a heavy burden of proof in supervisory liability cases. He not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or "tacit authorization of the offensive [practices]". *Orpiano*, 632 F.2d at 1101 (quoting *Withers v. Levine*, 615 F.2d 158, 161) (4th Cir. 1981)

Sheriff Will Montgomery, Deputy Samantha Demirtas, Sergeant Chris Darner, Sergeant Timothy Inman stated in their affidavits that the deputies "acted consistent with accepted policies, practices, training, and legal mandates, and did not arrest Plaintiff without probable cause." Dkt. No. 66-11, Affidavit of Sheriff Will Montgomery, *2; Dkt. No. 66-6, Affidavit of Deputy Samantha Demirtas, *3; Dkt. No. 66-8, Affidavit of Sergeant Chris Darner, *2; Dkt. No. 66-9, Affidavit of Sergeant Timothy Inman, *2. Even the Defendants' expert witness, Jack Ryan, wrongly concluded that refusing to give one's name was justification for Plaintiff Kareem Martin's arrest "for obstruction related charges was consistent with generally accepted policies practices, training and legal mandates trained to officers for application in field operations". Expert Report of John J. Ryan, Dkt. No. 66-7, *26.

The Sheriff and the Defendants have embraced the premise that they were entitled to arrest Plaintiff Kareem Martin and Keenan Martin for refusing to give their names. While it is a jury question as to whether the factfinder will believe the other excuses the Defendants have

6

provided, it is also a jury question as to whether Sheriff Will Montgomery, in his own affidavit and by his own hand, stated:

> The officers had probable cause to arrest Plaintiff for breach of peace as well as for obstruction of justice for his failure to cooperate in the investigation of the violent threats to "shoot up" the residence at 938 Martin Road.

Dkt. No. 66-11, Affidavit of Sheriff Will Montgomery, *2. Sheriff Will Montgomery's

Sheriff Will Montgomery has specifically asserted that arresting a person for not giving their name is the policy at Fairfield County Sheriff's Office. This is an unconstitutional policy. Plaintiff Kareem Martin has met the elements of supervisory liability:

(1) An unconstitutional policy issued and implemented by a supervisor;

(2) Plaintiff's constitutional rights were violated by subordinates who executed the unconstitutional policy.

Arresting a citizen for any false cover charge such as disorderly conduct, trespass, resisting arrest, obstruction of justice is nothing more than a policy that punishes citizens for contempt of cop. The Defendants and their experts have been extremely clear that this is Sheriff Montgomery's policy and they have talked their way into liability by signing affidavits and a report asserting the same.

The Magistrate's recommendation to dismiss Sheriff Will Montgomery should be disregarded.

**X.    The Magistrate's justification for granting qualified immunity contorts the facts and ignores the law.**

**a.  The Magistrate completely ignores the elements of breach of peace in determining probable cause to arrest.**

The Honorable Robert E. Payne, a Senior United States District Judge sitting in the Eastern District of Virginia, provides a particularly detailed analysis in determining "it is beyond

7

question that a showing of probable cause requires some support for every element of the

charged offense":

> Probable cause is a "commonsense, nontechnical" concept that deals "with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)) (internal quotation marks omitted). Probable cause is determined by a "'totality-of-the-circumstances' approach." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017). "An officer has probable cause for arrest when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005) (quoting *Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003)) (internal quotation marks and alteration omitted). When determining whether probable cause exists in a given case, a court must "limit [its] consideration to only those facts and circumstances known to the officer at the time of the arrest." *Wilson*, 337 F.3d at 398 (quoting *Smith v. Tolley*, 960 F. Supp. 977, 994 (E.D. Va. 1997)) (internal quotation marks and alteration omitted).
>
> It is well to recall that offenses "consist of the essential elements of the crime." *United States v. Brown*, 119 Fed. App'x 494, 498 (4th Cir. 2005) (quoting *United States v. Harris*, 128 F.3d 850, 854 (4th Cir. 1997)) (internal quotation marks omitted). And, it is settled that a "criminal law provision is made up of material elements. These are the pieces of the crime, each of which must be proven beyond a reasonable doubt to the fact finder in the case." Jens David Ohlin, *Criminal Law: Doctrine, Application, and Practice* 20 (2d ed. 2018) (internal emphasis omitted). Furthermore, the Due Process Clause requires the prosecution to prove beyond a reasonable doubt each element of the offence. *Patterson v. New York*, 432 U.S. 197, 215, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977) (noting that Supreme Court "held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense"); *see also* Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, Fed. *Jury Practice & Instructions* 161 (6th ed. 2008) ("The burden is always upon the prosecution to prove guilt beyond a reasonable doubt.").
>
> To support issuance of a warrant for arrest, "[e]vidence sufficient to secure a conviction is not required, but probable cause exists only if there is sufficient evidence on which a reasonable officer at the time could have believed that probable cause existed for the arrest." *Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019). In other words, "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Sennett v. United States*, 667 F.3d 531, 535 (4th Cir. 2012) (quoting *Adams v. Williams*, 407 U.S. 143, 149, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972)) (internal quotation marks omitted). Nonetheless, it is necessary to "examine the elements of [the given] crimes and determine whether a reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to

> arrest that person." *Guerrero v. Deane*, 750 F. Supp. 2d 631, 651 (E.D. Va. 2010).(quoting *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001)) (internal quotation marks omitted). Put differently, "to determine whether [the officer] had probable cause to lawfully arrest [the accused], a reviewing court necessarily must relate the events leading up to the arrest to the elements of the offense that [the officer] believed was being or had been committed." *Hayes v. City of Seat Pleasant*, 469 Fed. App'x 169, 172 (4th Cir. 2012); see also *Rogers v. Stem*, No. 1:12-cv-976, 2013 U.S. Dist. LEXIS 93310, 2013 WL 3338651, at *5 (E.D. Va. July 2, 2013) (discussing how probable cause assessments "must be made within the context of the specific offense under consideration, which requires this Court to consider centrally the elements of the crimes charged.").

*Bonnell v. Beach*, 408 F.Supp.3d 733, 750-751 (E.D.Va. October 3, 2019). Probable cause must exist at the time the warrant is issued, i.e. ultimate proof of guilt will not cure the lack of probable cause at the time of issuance. *Prosser v. Parsons*, 245 S.C. 493, 141 S.E.2d 342 (1965) ("If an officer does not know of the acts constituting an offense, that offense is not being committed in his presence in respect of the justification of an arrest without warrant. The acts must become known to the officer, at the time of their commission, through his sensory perception, and he must infer that they constitute an offense." 4 Am. Jur. (2d), Arrest, Section 31, p. 721, *citing in support State v. Williams*, *supra*, 237 S.C. 252, 116 S.E. (2d) 858."

Unless there is a new standard for the establishment of probable cause, a court cannot simply ignore an element of a charged offense. The Defendants have failed to show that Plaintiff Kareem Martin's or Keenan Martin's actions disturbed others around the Defendant. *See* Plaintiff's Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment, Dkt. No. 73-1, *18-20.

Calling the small cluster of Martin homes, on Martin Road, in the middle of nowhere in rural Fairfield County, a "residential area" is a stretch by the Magistrate. Even if it was considered a residential area there was still nothing illegal about shooting on their land. The Defendants cannot show that any the Martin family members in the Martin compound were

9

disturbed by the gun fire. Even when the shots were fired, the faces of Jaida Martin and Minnie Lee Martin are shown on the video and there is no reaction, nor is there any expression of fear. Exhibit 5, Deputy Demitas' Body Camera (2018-02-10 T23:41:13Z).

> **b. Once Plaintiff Kareem Martin and Keenan Martin were identified, the continued detentions and arrests were not based upon objective criteria and the continued detention was arbitrary and abusive.**

The Magistrate states there was probable cause to arrest Plaintiff Kareem Martin and Keenan Martin and states that the case cited by Plaintiff, In re Jeremiah W., 576 S.E.2d 185 ( only addressed the evidence necessary to "convict" a person. This is erroneous. The United States Supreme Court has held that it is a violation of the Fourth Amendment when officers lack any reasonable suspicion to believe a citizen was engaged or had engaged in criminal conduct. Although reasonable suspicion disintegrated once Plaintiff Kareem Martin and Keenan Martin were identified, it was completely gone once they were cleared for warrants and the deputies learned the weapons were not stolen. *Brown v. Texas*, 443 U.S. 47, 53 (1979). The law of the Fourth Circuit is clear that it is not a crime to refuse to give your name to law enforcement, especially when no stop and identify statutes exist. *Wingate v. Fulford*, 987 F.3d 299, 310 (4th Cir. 2021). Verbal criticism and challenge directed at police officers is conduct ordinarily protected by the First Amendment. *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).

> **c. The Defendants, and now the Magistrate, fail to state what crime is perpetrated, even if Plaintiff Kareem Martin and Keenan Martin did fire their weapons in the air.**

There is no crime of discharging a weapon into the air.

**XI.    The Magistrate's justification for dismissal of Plaintiff's claims under the SCTCA is without merit.**

10

The Magistrate has attempted to contort Plaintiff's state law claim into a much more complicated tort claim than it is on paper. Plaintiff is suing for a false arrest where the Fairfield County Sheriff's Office lacked probable cause. *Wortman v. City of Spartanburg*, 310 S.C. 1 (1992). *Wortman* is still the law of South Carolina and has not been overruled by *Wyatt v. Fowler*, 484 S.E.2d 590 (1997), the case cited by the magistrate.

### XII.  Conclusion.

The evidence, when taken in a light most favorable to Plaintiff Kareem Martin shows that two young men had finished exercising their Second Amendment Rights on private property when a crazed deputy comes out of the night, screaming at them with a gun drawn and shining a flashlight in their eyes. They were not involved in any investigation and they had no obligation to be cooperative or submissive to law enforcement. The Defendants stated they would punish Plaintiff Kareem Martin and his cousin, Keenan Martin if they did not cooperate, and they did so under force and color of law. They had no right to continue to detain, let alone arrest, Plaintiff Kareem martin and Keenan Martin. The statements and threats made by Deputies Demirtas, Inman, and Darner should be taken at face value and in a light most favorable to Plaintiff. The Magistrate has contorted and twisted a very straight forward situation into something it is not in order to obtain a particular result. Plaintiff Kareem Martin asks the Court to deny the Defendants' Motion for Summary Judgment and allow the Plaintiff to proceed to trial.

Respectfully Submitted,

THE CAMDEN LAW FIRM, PA

s/ Robert Butcher
Robert J. Butcher, 74722
Deborah J. Butcher, 74029
507 Walnut Street
Camden, South Carolina 29020
P.O. Box 610

                                        Camden, South Carolina 29020
                                        Telephone: (803) 432-7599
                                        Facsimile: (803) 432-7499
                                        Email: dbutcher@camdensc-law.com
                                        Email: rbutcher@camdensc-law.com

                                        PERRY LAW FIRM
                                        Brett A. Perry
                                        P.O. Box 1
                                        Camden S.C. 29021
                                        803-572-5885
                                        brett@perrylawfirm.us
                                        Attorneys for the Plaintiff

Camden, South Carolina
September 21, 2021